IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 0:25-cv-61105-LEIBOWITZ

**FRUMAR AGRI FOODS (P) LTD.,** *et al.,*

    *Plaintiffs,*

v.

**RRK FOODS INC.,** *et al.,*

    *Defendants.*
_____/

## ORDER

THIS CAUSE comes before the Court on Plaintiffs Frumar Agri Foods (P) LTD., Tejas Food Industries LLP, and NSP International's (collectively, "the Plaintiffs") Motion for Entry of Temporary Restraining Order and Preliminary Injunction ("the Motion") [Mot., ECF No. 24], filed on June 18, 2025. Defendants RRK Foods Inc., Align Traders, Inc., Mypress Friendly Foods Private Limited, Ravi Muvva, Kishore Muvva, and Pratheek Muvva (collectively, "the Defendants") responded to the Motion [Resp., ECF No. 39] on June 30, 2025, and Plaintiffs replied on July 1, 2025 [Reply, ECF No. 41]. For the following reasons, the Motion is denied.

## BACKGROUND

The allegations in Plaintiffs' Amended Complaint are as follows: Plaintiffs are three corporate entities with principal places of business in India owned, operated, and controlled by Ramesh ("Ramesh") and Pragathi ("Pragathi") Muvva. [Am. Compl., ECF No. 17 ¶¶ 1–4]. The Plaintiffs specialize in manufacturing and distributing South Indian food products in the United States and elsewhere. [*Id.* ¶ 11]. Plaintiffs claim that these products were developed primarily by Ramesh Muvva and Frumar Agri Foods (P) LTD. ("Frumar"). [*Id.* ¶¶ 12, 16]. Plaintiffs have been exporting their food products to the United States since 2009, and since 2016 have been selling "Swetha" brand

1

products in the United States. [*Id.* ¶¶ 22–23]. In 2018, Plaintiffs first used the term "Telugu Foods" and in 2020, Plaintiffs used the term "Swetha Telugu Foods." [*Id.* ¶ 24].

Plaintiffs allege that Defendant Ravi Muvva ("Ravi") was employed by Frumar, his brother's company, as a sales consultant primarily responsible for facilitating United States customs clearance, FDA approvals, and customer deliveries. [*Id.* ¶ 29]. In 2016, Ramesh financially assisted Ravi to create a distribution company, Defendant RRK Foods, Inc. ("RRK") to import and distribute Plaintiffs' food products into the United States, including Florida. [*Id.* ¶ 31]. On January 28, 2016, Frumar contacted an attorney seeking to register five trademarks in the United States, including "Swetha" and "Telugu." [*Id.* ¶¶ 33–34]. On February 8, 2016, Frumar, through Ravi, followed up with the attorney and sought to register the marks "Telugu Foods" and "Telugu Pickles." [*Id.* ¶ 35–36]. On April 3, 2016, Ramesh directed Ravi to register these trademarks and others in the United States on behalf of Frumar. [*Id.* ¶ 37]. While Ravi was responsible for registering these marks, Frumar paid the associates attorneys' fees and costs. [*Id.* ¶ 40]. Ravi filed the six trademark applications for the Swetha-Telugu marks in the name of RRK, rather than Frumar ("Relevant Trademarks"). [*Id.* ¶ 45; Mot. at 8–9].

Plaintiffs further allege that RRK marked and distributed Plaintiffs' food products under the Swetha-Telugu marks and that all RRK's marketing in the United States was paid for by Plaintiffs. [Am. Compl. ¶¶ 47–48]. The parties formalized their arrangement in a Memorandum of Understanding ("MOU") on March 18, 2025, which recognized RRK as a nonexclusive distributor. [*Id.* ¶ 49–50]. The MOU required transfer to Defendants of all trademarks related to Defendants on or before May 15, 2024, otherwise the MOU is "null and void." [ECF No. 17-18 at 5]. RRK never transferred the Relevant Trademark registrations to Plaintiffs. [Am. Compl. ¶ 52].

Plaintiffs further allege that Defendants engaged in a counterfeit scheme to sell knock-off products bearing Plaintiffs' marks by obtaining Plaintiffs' trade secrets and engaging an Indian manufacturer to mimic Plaintiffs' offerings. [*Id.* ¶¶ 53–70; Mot. at 10]. Defendants sent "Notices of

2

Trademark Infringement" letters to at least nine of Plaintiffs' importers and distributors, accusing them of infringing the Relevant Trademarks. [Mot. at 10]. One such distributor informed Plaintiffs that Defendants stated that the distributor "cannot legally sell any on-hand inventory of Telugu products past June 6th, 2025, and must destroy all such inventory effective that date." [*Id.* at 11]. Additionally, the distributor stated that Defendants noted that all containers destined for that distributor would be flagged for customs, and the distributor would be required to destroy the containers or export them back to India. [*Id.*].

Defendants registered the Relevant Trademarks with Customs and Border Patrol ("CBP") which has seized several containers of Plaintiffs' products, blocking them from reaching distributors and consumers. [*Id.* at 11–12]. At least some of Plaintiffs' products were placed on "hold" by CBP since June 1, 2025. [Mot. at 12].

Plaintiffs bring thirteen causes of action against Defendants: (I) Action to Rectify the Trademark Register under 15 U.S.C. § 1119 against RRK and Ravi; (II) Fraudulent Trademark Registrations under 15 U.S.C. § 1120; (III) Federal Trademark Infringement under 15 U.S.C. § 1114 against all Defendants; (IV) False Designation of Origin under 15 U.S.C. § 1125(a) against all Defendants; (V) Copyright Infringement under 17 U.S.C. § 101, *et seq.*, against all Defendants; (VI) Unfair Competition against all Defendants; (VII) Unjust Enrichment from Counterfeiting against all Defendants; (VIII) Breach of Contract against RRK and Ravi; (IX) Commercial Disparagement and Trade Libel against all Defendants; (X) Tortious Interference with Business Relationships against all Defendants; (XI) Account Stated against RRK; (XII) Open Account against RRK; and (XIII) Unjust Enrichment – Goods Retained against RRK. [*Id.* ¶¶ 71–135].

**LEGAL STANDARD**

In order to obtain a temporary restraining order or a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be

suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). At the preliminary-injunction stage, a court may consider affidavits and hearsay evidence that would not be admissible for a permanent injunction and may grant the preliminary injunction without finding that the evidence positively guarantees that the plaintiff will succeed on its claims. *Warrior Trading, Inc. v. Jaffee*, No. 1:19-CV-20121-JLK, 2019 WL 3428509, at *3 (S.D. Fla. Jan. 23, 2019).

## DISCUSSION

Plaintiffs move for a temporary restraining order and preliminary injunction only as to Count I—an action to rectify the trademark register under 15 U.S.C. § 1119. Plaintiffs argue that (1) they can demonstrate a likelihood of success on the merits for the following reasons: (a) they, as manufacturers, presumptively and irrebuttably own the marks; (b) Defendants fraudulently registered the marks in their own name; and (c) the Court has the power to declare plaintiffs' ownership; (2) they are suffering irreparable harm; (3) the balance of equities weigh in their favor; (4) the public interest favors injunctive relief; and (5) no bond or a minimal bond should be ordered.[1] [*See generally* Mot.]. This Court finds that Plaintiffs have not, at this stage, demonstrated a likelihood of success on the merits and only addresses that prong. Additionally, this Court separately notes that 15 U.S.C. § 1119 is not an independent cause of action, and therefore Plaintiffs' motion for a temporary restraining order and preliminary injunction is meritless as a procedural matter.

---

[1] The Plaintiffs also argue that the Court has personal jurisdiction over the Defendants. [Mot. at 6]. The Defendants don't make any affirmative argument that the Court has no personal jurisdiction. [Resp. at 1 n.1]. Accordingly, the Court need not address issues of personal jurisdiction.

I.      Plaintiffs have not demonstrated a likelihood of success on the merits.

Under 15 U.S.C. § 1119, "a district court may cancel a federally registered trademark if a plaintiff shows (1) it is likely to be damaged by the infringer's continued use of the infringing mark, and (2) that there were valid grounds for discontinuing registration." *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, __F.4th__, 2025 WL 1637952, at *15 (11th Cir. June 10, 2025) (citing *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1171 (11th Cir. 2019)). A party may petition to cancel a registered mark by alleging the registration was obtained fraudulently. *Id.* (citing 15 U.S.C. § 1064(3)). "Fraud occurs when an applicant knowingly makes false, material representations of fact in connection with an application for a registered mark." *Id.* (citing *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008)).[2]

Plaintiffs' only argument that Defendants fraudulently registered the marks is that the facts of this case are similar to *Bacson Tobacco Co., Ltd. v. Diplomatic Int'l Co., Ltd.*, No. 1:20-cv-21066, 2020 WL

---

[2]     Plaintiffs argue that they are likely to succeed on the merits of their § 1119 claim because a manufacturer presumptively and irrebuttably owns the marks. [Mot. at 15–19]. However, of the cases they cite, only one mentions this presumption as it relates to § 1119. That case—*Rigoni USA, Inc. v. Rigoni di Asiago USA, LLC*, No. 07-20070-CIV, 2009 WL 10667806, at *10 (S.D. Fla. Jan. 14, 2009)—is distinguishable. There, the manufacturer distributed its products first, before the distributor at issue began distributing the food products. Here, however, Plaintiffs admit that they began selling "Swetha" products in 2016, the same year which Frumar and RRK agreed that RRK would market and distribute Plaintiffs' food products. Thus, *Rigoni* is distinguishable. Further, Plaintiffs admit that there was some sort of agreement between Frumar and RRK beginning in 2016, but there is no sufficient evidence showing that RRK was not entitled to ownership of the marks. [*See* Am. Compl. ¶ 47]; *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1218 (S.D. Fla. 2021) (noting that the presumption that a foreign manufacturer owns a trademark of its product applies unless there is an agreement between the manufacturer and a distributor otherwise).

In their Motion, Plaintiffs do not argue that no agreement (written or otherwise) exists, but instead they merely say they are indisputably the manufacturers of their food products—which is insufficient under the law they cite. [*See* Mot. at 15–19]. Even if Plaintiffs are correct that a presumption exists as to ownership, they have not shown that this entitles them to relief under § 1119. A presumption that a manufacturer owns the marks is insufficient for this Court to determine that Plaintiffs are likely to succeed and therefore entitled to cancel RRK's marks. This determination depends crucially on whether RRK fraudulently registered the marks; even if there is a presumption that Frumar owned the marks, it can be overcome with evidence that Frumar knew RRK would be registering the marks in its name and consented to this (by agreement or otherwise).

1288572 (S.D. Fla. Mar. 18, 2020).  However, the Plaintiff there moved for a temporary restraining order and preliminary injunction on its unfair competition and false designation of origin claim.  *See Bacson Tobacco Company, Ltd., et al. v. Diplomatic International Company, Ltd., et al.*, Case No. 1:20-cv-21066 [ECF No. 16 at 12].  Therefore, the fact that the *Bacson* court granted a temporary restraining order is irrelevant to whether this Court should grant Plaintiff's temporary restraining order (here based only on § 1119).

Further, while the Plaintiffs make no argument in the Motion that Ravi fraudulently registered the trademarks under RRK when he should have registered them under Frumar, the evidence submitted by Plaintiff is insufficient to show a likelihood of success on the merits that Ravi did so. The only evidence submitted that allows for an inference of fraud is Ramesh's statement in an affidavit that Ravi registered the trademarks in RRK's name "[u]nbeknownst to [Ramesh]," and that Ravi knew that RRK did not own the Swetha-Telgugu marks.  [Affidavit of Ramesh Muvva, ECF No. 25 ¶ 23]. And the MOU does not help Plaintiffs either; Ravi's agreement that RRK was in the business of marketing food and general goods in the United States and agreement to transfer the Relevant Marks to Plaintiffs does not show that Ravi or RRK committed fraud in registering the Relevant Trademarks in RRK's name.

In the absence of any convincing argument that Defendants committed fraud, this Court cannot find that Plaintiffs are entitled to injunctive relief at this stage under § 1119.

Separately, this Court notes that, even if it found that Plaintiffs demonstrated a likelihood of success on the merits on their § 1119 claim, this Court cannot grant their requested relief.  Plaintiffs only move for a temporary restraining order under 15 U.S.C. § 1119 – the statutory authorization for a court to order the cancellation of a trademark registration or otherwise rectify the register.  [*See* Mot. at 3–4 ("Plaintiffs are moving for a TRO and Preliminary Injunction as to a single count, Count I, of the Amended Complaint, DE 17 – Rectifying the Principal Trademark Register under 15 U.S.C. §

1119 to reflect Plaintiffs Frumar and Tejas as the rightful and lawful owners of the SWETHA TELUGU trademark registrations or canceling them.")].  In granting relief under this cause of action, the Court cannot enjoin the Defendants from "misrepresenting themselves as owners of the marks, interfering with Plaintiffs' importer/distributorship relationships, and engaging the CBP to seize Plaintiffs' SWETHA TELUGU brand food products."  [Reply at 3].  To do so would expand the powers of the Court too greatly by allowing it to enjoin activity on which the Court has not found a likelihood of success on the merits.  Had Plaintiffs moved for injunctive relief on one of their other counts and made a proper showing of likelihood of success on the applicable elements, the Court may have been able to grant their requested relief.

    II.    <u>15 U.S.C. § 1119 does not provide an independent cause of action.</u>

Section 1119 provides courts with a *remedy* available after it finds that some other trademark claim succeeds.  Section 1119 "only provides a remedy for some other violation of the trademark laws, not an independent cause of action."  *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 903 (8th Cir. 2016) (citing *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992); *Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 758–59 (Fed. Cir. 1987); and 5 McCarthy on Trademarks § 30:110 (2010)); *see also CEI Grp., LLC v. CEI Composite Materials, LLC*, No. 19-1611, 2021 WL 357018, at *6 (E.D. Mich. Feb. 2, 2021); *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, No. CIV. 11-5052-JLV, 2019 WL 6728990, at *4 (D.S.D. Dec. 11, 2019) ("Because a court's decision may raise doubts about the validity of a trademark registration, § 1119 arms the court with the power to update the federal trademark register to account for a mark's actual legal status (or lack thereof) *after it has been adjudicated*, thereby reducing the potential for future uncertainty over the rights in a particular mark.") (emphasis added) (citing *Central Manufacturing, Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007)); *cf. also Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*,

934 F.2d 1551, 1557 (11th Cir. 1991) (noting that a court can cancel a registration if it finds that a plaintiff succeeds on an underlying Lanham Act claim). Indeed, McCarthy on Trademarks & Unfair Competition, which Plaintiffs cite favorably, notes that Section 1119 "alone does not create grounds for federal jurisdiction. [Section 1119] creates a remedy . . . . If one could file suit in federal court solely for cancellation of a registration, this would constitute a short-circuit of the power given to the USPTO Trademark Board to consider such cases."  4 McCarthy on Trademarks and Unfair Competition § 30:110 (5th ed.).

This is so because the plain language of Section 1119 "states that cancellation is available in 'any action involving a registered mark.'" *Airs Aromatics, LLC*, 744 F.3d 595, 599. "This language specifies that cancellation may only be sought if there is already an ongoing action that involves a registered mark; it does not indicate that a cancellation claim is available as an independent cause of action." *Id.*; *see also Nike*, 663 F.3d 89, 98; *Ditri*, 954 F.2d 869, 873 ("[A] controversy as to the validity of or interference with a registered mark must exist before a district court has jurisdiction to grant the cancellation remedy."). Had Plaintiff moved in its Motion on one of their other causes of action and provided this Court with sufficient evidence to demonstrate likelihood of success, their Motion may have been successful.

## CONCLUSION

For the reasons stated, it is **ORDERED AND ADJUDGED** that the Motion for a Temporary Restraining Order [**ECF No. 24**] is **DENIED.** Plaintiffs have not shown that they are entitled to a temporary restraining order under 15 U.S.C. § 1119. If Plaintiffs wish to file an amended motion for a preliminary injunction, they may do so **no later than July 9, 2025.** At that time, the Court will set a briefing schedule and determine whether to set the matter down for a hearing.

**DONE AND ORDERED** in the Southern District of Florida this July 2, 2025.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record